Taylor, C. J.
delivered the judgment of the Court.
It is to be decided whether an action can be sustained upon the facts stated in the declaration. The inconvenience occasioned to the plaintiff by the erection of the dam, is felt by him in common with all those, who own lands on the margin of the Neuse River, above the dam; and who, in consequence of such ownership, have been accustomed to take fish in the stream. This action cannot be supported without admitting, at the same time, the right of all such persons, even to the very source of the stream, to maintain similar actions. Their respective losses may vary in degree, but the principle of the action is equally applicable to them all; and if suits were thus multiplied, the inevitable consequence would be to overwhelm any individual against whom they might be brought, and thus lead to a severity of pu *263 nishment utterly disproportioned to the offence, without affording to the public, that benefit, to which alone punishments can be legitimately directed.
The law, with admirable wisdom, has interposed an effectual barrier against so fruitful a source of litigation and injustice; and has separated, by well defined boundaries injuries done to the public, from those done to an individual. Hence, for any of those acts which are in the nature of a public nuisance, no individual is entitled to an action, unless he has received an extraordinary and particular damage, not common to the rest of the citizens; as if a man suffer an injury by falling into a ditch dug across a common highway—Co. Litt. 56,-5 Rep. 73,-or is thrown from his horse by means of logs laid across a highway,—Carth. 194-or receive any other special injury which is direct and not consequential. In all cases where the right is of a public nature, the denial of the right to an individual is not actionable unless the plaintiff charges in his declaration, and proves a special damage; as where an action was brought against the owner of a common ferry, for refusing to ferry the plaintiff over, who claimed a right by prescription to pass toll free, it was held not to lie, because the right was common—1 Salk. 12—and this proves too, that the objection to the action is not removed, by the act being more prejudicial to one man than another. Nor is it answered by shewing, that only a certain portion of the community, and not all the citizens, are incommoded by the act; for that occurred in Williams's case, before cited from 5 C. 73; a reference to which will shew, that only the tenants of a particular manor could possibly receive any detriment from the neglect which, was laid as the ground of the action.
It is true that the law enjoins upon every man, and will enforce in a suitable manner, that precept of natural justice so to use his own as rot to injure another. But the rule, in, every instance, pre-supposes that the party complaining has, *264 in the thing injured, a property either absolute or qualified. The cases of injuring the dwelling, of obstructing lights, of exercising offensive trades, and the many others stated in the books, are all founded upon this principle. But what property could plaintiff have in the fish, in their wild state, before they ascended to the water flowing over his land? In animals ferœ naturœ a man may have a qualified property, which continues only while they are in his possession or under his controul; and so long they are under the protection of the law. But the defendant has the same extent of ownership in them, in virtue of which he might have caught them in his own water, and thus have done an equal injury to the plaintiff’s fishery. Whether their progress thither is obstructed by a mill dam, or by being taken in weirs or nets, the plaintiff loses the benefit of his fishery. But in both cases, the defendant is exercising a legal right, and certainly with as respectable and beneficial a motive in the case of erecting a dam, as in that of catching fish.
It would produce the most extensive mischief in society to sanction the principle, that a man may be sued for using a right, to the consequential and indirect damage of another. Such a doctrine would unnerve all intellectual efforts in the advancement of science, arrest improvement in those arts, which diffuse around civilized man his chief comforts and highest ornaments; extinguish the lights of knowledge, and effectually check that spirit of useful discovery with which the present, more than any former age, has teemed, for the utility and embellishment of social life.
The frequent interference of the Legislature on the subject of fish, both in England and this State, impliedly recognizes common law right in the owners of the soil on both sides of the river, to exercise the property as they may think fit. Until the enactment of the law of 1787, C. XV, it was probably usual to build dams quite across some rivers, and entirely to obstruct the passage of fish: that act requires *265 one fourth of the river to be left open for the passage of fish. The common law right has been restrained also by several other acts, relative to seine fisheries, all directed to promote the benefit of the public, at the expence of the individual owners of the rivers. A penalty is annexed to the violation of those laws, and the interest of the public seems, in general, to be well protected by them. The result of our consideration of this subject is, that there should be, in both actions, judgment for the defendant.
Seawell and Cameron, Judges, gave no opinion, having been of counsel in these causes.